IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| RANDALL WILSON, <br><br> Plaintiff, <br><br> v. <br><br> MARC HORNE, and JESSE SHOOK, <br><br> Defendants. | CIVIL ACTION NO.: 5:21-cv-60 |

### REPORT AND RECOMMENDATION

This matter comes before the Court on Defendants' converted Motion for Summary Judgment. See Doc. 47; Doc. 34.[1] Plaintiff filed a Response opposing Defendants' Motion. Doc. 37. Defendants replied. Doc. 41. For the following reasons, I **RECOMMEND** the Court **GRANT** Defendants' Motion for Summary Judgment and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

### PROCEDURAL HISTORY

Plaintiff brought this suit under 42 U.S.C. § 1983, alleging violations of the Fifth and Eighth Amendments. Doc. 1. The Court completed frivolity review and dismissed all claims against the Waycross Police Department. Doc. 18. However, the Court allowed Plaintiff's Fifth and Eighth Amendment claims against Defendants Crews and Deloach to proceed. Id. Plaintiff

---

[1] In the Order converting Defendants' Motion to Dismiss into a Motion for Summary Judgment, the Court gave the parties 10 days to submit additional briefing or evidence if they chose. Doc. 47. The parties have not submitted any additional evidence, and the time to do so has expired.

then filed a motion to amend, asking to swap Defendants Crews and Deloach with Defendants Horne and Shook, respectively.  Doc. 23.  The Court granted the motion.  Doc. 26.  Plaintiff, in his Amended Complaint, clarifies he wishes to assert the same excessive force claims that were set forth in the original Complaint against Defendants Crews and Deloach, only against Defendants Horne and Shook.  See Doc. 23-1.  Thus, the Court cites to Plaintiff's original Complaint since this document contains Plaintiff's factual allegations.

Plaintiff alleges Defendants used excessive force while arresting him after he was pulled over in a routine traffic stop.  Doc. 1 at 4.  Plaintiff claims after he was stopped, and after he presented his license, he was taken out of the car and handcuffed so his vehicle could be searched.  Id.  Plaintiff alleges he seated on the curb, but at some point, he fell over the edge of the curb.  Plaintiff alleges Defendants Horne and Shook proceeded to taser and hit him repeatedly in the head after he fell.  Id.  As a result of the force, Plaintiff claims he had swelling on the back of his head, scarring on his forehead from hitting the cement repeatedly, and cuts on both arms and his knees were skinned from being dragged.  Id. at 5.  Additionally, he had puncture wounds and experienced shakes from the taser.  Id.

## PROPOSED FINDINGS OF FACT[2]

On July 26, 2021, Defendant Horne initiated a traffic stop on the vehicle Plaintiff was driving for making an improper turn.  Defendant Horne spoke with Plaintiff for several seconds about the reason for the stop and to request Plaintiff's license.  Plaintiff did not have a copy of his license and appeared to be searching his cell phone for a photograph of his identification.  Soon after the conversation began, Defendant Horne asked Plaintiff to step out of the vehicle and

---

[2]  This Section is largely drawn from the three body camera recordings of the arrest and the incident report produced after the fact.  See Docs. 19-1 through 19-4.  As explained, these body camera recordings directly contradict Plaintiff's factual allegations in the Complaint in several material ways.

2

asked Plaintiff if he had any marijuana in the car. Before exiting the vehicle, Plaintiff states he smoked marijuana about an hour earlier.

After stepping out of the car, Plaintiff began trying to walk away from Defendant Horne. Defendant Horne instructed Plaintiff to turn to face Horne and instructed Plaintiff to open his mouth. Plaintiff complied, and when Plaintiff opened his mouth, Defendant Horne noticed Plaintiff was attempting to eat a marijuana bud. Defendant Horne announced he could see Plaintiff trying to eat the marijuana. Plaintiff again attempted to walk away from Defendant Horne and the car. Defendant Horne told Plaintiff to not walk away, and Plaintiff turned and placed his hands on the hood of Defendant Horne's patrol car.

Defendant Horne asked if Plaintiff had "anything else on [him,]" and Plaintiff responded in the affirmative, indicating he had some other item on his person. Defendant Horne then directed Plaintiff to place his hands behind his back and began to handcuff Plaintiff, cuffing one wrist. Defendant Horne said to Plaintiff, "you ain't being arrested, you're being detained."[3] Plaintiff then moved away from Defendant Horne, prompting Horne to tell Plaintiff again to not "go anywhere." During this process, and after locking only one cuff on one wrist, Defendant Horne determined two sets of handcuffs would be needed to comfortably handcuff Plaintiff. Defendant Shook, who had arrived as backup shortly after the initial traffic stop, provided Defendant Horne with an additional set of handcuffs. Defendant Horne then attempted to connect the two sets of cuffs and cuff Plaintiff's second wrist.

At that point, Plaintiff jerked his arms away from the officers, turned, and attempted to

---

[3]  While Defendant Horne told Plaintiff he was only detaining him and not arresting him, this does not change the analysis of the issue. See Graham v. Connor, 490 U.S. 386, 395 (1989) (indicating all claims that law enforcement officers utilized excessive force in the course of an arrest, investigatory stop, or other seizure should be analyzed under the Fourth Amendment reasonableness standard).

flee. Defendant Horne immediately tackled Plaintiff. As the two men were rolling on the ground, Defendant Horne hit Plaintiff in the head with a closed fist a few times and shouted commands for Plaintiff to stop resisting. Defendant Shook moved closer and deployed his taser against Plaintiff approximately three times. During the altercation, both officers shouted commands for Plaintiff to stop resisting and for Plaintiff to place his hands behind his back. Plaintiff stopped struggling after a short time and placed his hands behind his back to be cuffed. Once Plaintiff complied with the officers' instructions, Defendant Horne promptly discontinued striking Plaintiff and Defendant Shook ceased using his taser. The officers finished handcuffing Plaintiff and placed him seated and upright on the curb. Based on the video time stamps, approximately two minutes elapsed from the time Plaintiff exited his vehicle and when he was cuffed and placed on the curb. The physical altercation itself lasted approximately 16 seconds.

Plaintiff remained on the curb for a lengthy period of time after the altercation. At no point during the time Plaintiff was cuffed and seated on the curb did any officer strike or use any force on Plaintiff. The officers asked Plaintiff why he attempted to run, and Plaintiff responded it was because he was in possession of marijuana. Notably, two of the body camera videos (video from Defendant Horne and Shook) document the altercation from two different angles, and all three of the body camera videos (including the video from Defendant Crews) document the period of time Plaintiff was seated and cuffed on the curb. The videos are consistent without any noticeable gaps. The incident report states paramedics were called and Plaintiff was treated for scraped knees. Doc. 19-1.

## LEGAL STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  However, there must exist a conflict in substantial evidence to pose a jury question."  Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).  "If the evidence [produced by the nonmoving party] is merely colorable or is not significantly probative summary judgment must be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 at 249 (1986) (citations omitted).

The moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law.  See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003).  Specifically, the moving party must identify the portions of the record which establish there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law."  Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011).  When the non-moving party would have the burden of proof at trial, the moving party may discharge his burden by showing the record lacks evidence to support the nonmoving party's case or the non-moving party would be unable to prove his case at trial.  See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)).  Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial.  Hinson v. Bias, 927 F.3d 1103, 1115 (11th Cir. 2019).  In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party.  Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County, 630 F.3d 1346, 1353 (11th Cir. 2011).

**DISCUSSION**

Defendants argue they are entitled to qualified immunity. Doc. 34. Plaintiff's response to Defendants' motion—and the qualified immunity argument in particular—is superficial and conclusory. Aside from a prefatory statement, Plaintiff's entire response to Defendants' motion is: "Plaintiff opposes any argument that he is not entitled to relief under 42 USC 1983." Doc. 37.

**I.    Legal Standard**

To receive qualified immunity, a government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." Hardy, 238 F. App'x at 439 (citing Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002)). Then, the burden shifts to the plaintiff to show the defendant is not entitled to qualified immunity. Id. Defendants Horne and Shook were plainly acting within the scope of their discretionary authority as police officers when they pulled over Plaintiff for a traffic violation and when they attempted to restrain him during an arrest. Moreover, Plaintiff does not dispute Defendants Horne and Shook were acting within the scope of their discretionary authority.

Thus, the burden shifts to Plaintiff to show: (1) whether the facts viewed in the light most favorable to Plaintiff establish a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. Gilmore v. Hodges, 738 F.3d 266, 272 (11th Cir. 2013); see also Mousa v. Bd. of Trustees of Univ. of Ala., No. 7:12-CV-03008, 2014 WL 1338110, at *1 (N.D. Ala. Mar. 31, 2014).

"Strict adherence to the order of those two inquiries is not required." Fish v. Brown, 838 F.3d 1153, 1162 (11th Cir. 2016) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). "In appropriate cases, it is within a district court's discretion to assume that a constitutional violation occurred in order to address, in the first instance, the question of whether such a presumed

6

violation was clearly established on the date of the incident leading to the suit." Id. Even when there is a genuine factual dispute regarding whether a constitutional violation occurred, if the defendant did not act in violation of clearly established law, then the claim will not proceed past the motion to dismiss stage. See Nolen v. Jackson, 102 F.3d 1187, 1191 (11th Cir. 1997) (granting motion to dismiss on qualified immunity grounds because there was no support the conduct alleged in the case constituted a violation of clearly established law).

The violation of a constitutional right is clearly established if a reasonable official would understand his conduct violates that right. See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011). A plaintiff can meet the clearly established requirement in one of three ways:

(1)  by pointing to a materially similar decision the Supreme Court, the Eleventh Circuit Court of Appeals, or of the supreme court of the state in which the case arose;

(2)  by establishing that a broader, clearly established principle should control the novel facts of the case; or

(3)  by showing the case is one of those rare ones that fits within the exception of conduct which so obviously violates the constitution that prior case law is unnecessary.

Powell v. Snook, 25 F.4th 912, 920 (11th Cir. 2022). For the first and second methods, the plaintiff must point to decisional law. Id. For the second and third methods, the court will look for "obvious clarity," which refers to a "principle or provision so clear that, even without specific guidance from a decision involving materially similar facts, the unlawfulness of the officer's conduct is apparent." Id. "Obvious clarity" is a "narrow exception to the normal rule that only case law and specific factual scenarios can clearly establish a violation." Id.

II. **Plaintiff Fails to Show the Right at Issue Was Clearly Established**

The Court first considers whether Plaintiff has shown the right at issue was clearly established at the time of Defendants' alleged misconduct. The specific conduct at issue is Defendants' use of force while placing Plaintiff in cuffs after he attempted to flee—namely, Defendant Horne striking Plaintiff in the head and Defendant Shook discharging his taser approximately three times.

As explained above, the burden is on Plaintiff to demonstrate the unlawfulness of Defendants' conduct was clearly established at the time of the alleged violation. See Pearson, 555 U.S. at 232. However, Plaintiff provided only a conclusory response to Defendants' assertion of qualified immunity. Plaintiff did not cite any authority or even attempt to articulate a general proposition Defendants violated.[4] Plaintiff's statement he "opposes any argument that he is not entitled to relief under 42 U.S.C. § 1983" is not sufficient to meet the burden required by qualified immunity. Doc. 37 at 1. Because Plaintiff does not meet his burden, Defendants Shook and Horne are both entitled to qualified immunity, and the Court should grant summary judgment as to both Defendants.

III. **Plaintiff Fails to Show Defendants Shook and Horne Committed a Constitutional Violation**

Plaintiff also fails to demonstrate any constitutional violation occurred. All claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are analyzed under the Fourth Amendment's reasonableness standard. Graham, 490 U.S. at 395. The Eleventh Circuit has identified three factors to consider

---

[4] Even if Plaintiff had articulated such a general proposition, this would likely not be enough to overcome qualified immunity. See Corbitt v. Vickers, 929 F.3d 1304, 1316 (11th Cir. 2019) (holding the district court erred when relying on a general proposition to clearly establish excessive force is unconstitutional).

in determining whether the force applied was reasonable: the need for the application of force, the relationship between the need and amount of force used, and the extent of injury inflicted. Draper v. Reynolds, 369 F.3d 1270, 1277–78 (11th Cir. 2004).  The Eleventh Circuit has determined "some use of force by a police officer when making a custodial arrest is necessary and altogether lawful, regardless of the severity of the alleged offense." Durruthy v. Pastor, 351 F.3d 1080, 1094 (11th Cir. 2003).  The "reasonableness" of the use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.  Id.  Additionally, use of force must be assessed on a case-by-case basis.  Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994); see also Graham, 490 U.S. at 1278 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.").  Thus, "qualified immunity applies unless application of the standard would inevitably lead a reasonable officer in the defendant's position to conclude that the force was unlawful." Gold v. City of Miami, 121 F.3d 1442, 1447 (11th Cir. 1997) (citing Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993), *modified*, 14 F.3d 583 (11th Cir. 1994)).

    ***Need for Application of Force.***  Upon reviewing the body camera videos of the incident, it is clear a reasonable officer on the scene would have believed some force was necessary for Defendant Horne to complete the arrest.  Plaintiff acknowledged he had consumed illegal drugs just before driving, and Plaintiff attempted to conceal evidence by eating a marijuana bud.  Defendant Horne was in the process of handcuffing Plaintiff when he attempted to flee from officers.  Defendant Horne quickly tackled Plaintiff to the ground and began shouting commands for Plaintiff to stop resisting.  Defendant Shook was providing back up to Defendant Horne, who

9

could not immediately subdue Plaintiff. Plaintiff was not fully restrained and was attempting to evade arrest. As viewed from the perspective of an officer on the scene, it was reasonable to believe it was necessary to use some amount of force to complete the arrest.

***Relationship Between Need and Amount of Force.***  Using a closed fist, Defendant Horne hit Plaintiff in the head a few times to get Plaintiff to comply with Horne's commands to be cuffed and to stop resisting. Defendant Shook, for his part, stunned Plaintiff approximately three times to assist Defendant Horne's efforts to detain Plaintiff. Both Defendants stopped utilizing force immediately when Plaintiff complied with Defendant Horner's verbal commands. Defendant Horne ceased hitting Plaintiff once Plaintiff put his hands behind his back. Even before Plaintiff actively put his hands behind his back, Defendant Shook stopped activating the taser and was merely holding it against Plaintiff to encourage compliance with Defendant Horne's orders. This amount of force was reasonably proportionate to the need for force.

***Extent of Injuries.***  The facts viewed in the light most favorable to Plaintiff show the injuries from Defendant Horne's blows and Defendant Shook's taser strikes were relatively minor.[5] The incident reports demonstrate emergency medical services called to the scene of the incident only treated Plaintiff for scrapped knees. Doc. 19-1. This is consistent with the body camera footage. Based on review of that footage, Plaintiff had—at most—scrapes and bruises from the altercation. Plaintiff likely had some minor injuries from the taser prongs, though such injuries are not evident from the video. The body camera footage records a lengthy period of

---

[5] Plaintiff made various allegations about the extent of his injuries in his Complaint, including: swelling to the back of his head, scarring on his forehead, cuts on both arms, skinned knees, puncture wounds from the taser, and "shakes" from being tasered. Doc. 1 at 5. However, these allegations are not supported by any citations to the record, and, therefore, will not be considered in resolving Defendants' Motion. Fed. R. Civ. P. 56(c). The only evidence concerning the extent of Plaintiff's injuries are the incident reports, doc. 19-2, and the body camera footage.

time after the altercation and, during that period, Plaintiff does not describe any additional injuries, pain, or even discomfort. To the contrary, during the period after the altercation, Plaintiff is generally calm and conversant with officers. The body camera video shows Plaintiff was coherent, and appeared largely unfazed, in the aftermath of the tasering and emergency medical services personnel did not appear to identify any additional injuries from the taser. See Draper, 369 F.3d at 1278 (determining no serious injuries were inflicted where the plaintiff was tasered and video of the incident showed the plaintiff was coherent shortly after the incident).

While the injuries Plaintiff suffered were undoubtedly uncomfortable, they are not serious injuries. Thus, this factor supports the conclusion Defendants' use of force was reasonable and proportional.

In examining the totality of the circumstances, it is plain there was a reasonable need for force, the amount of force used was proportional to the need, and the extent of the injury was relatively minor. Plaintiff has not demonstrated Defendants Horne or Shook committed a constitutional violation. Thus, both Defendants are entitled to qualified immunity, and I **RECOMMEND** the Court **GRANT** summary judgment as to both Defendants.

## IV.     Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal, it is proper to address these issues now. See Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context

must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith.  Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants' converted Motion for Summary Judgment and **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.  I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v.

Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 15th day of August, 2023.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA